IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, and STATE OF GEORGIA ex rel. REBECCA WILLIAMS, MORGAN VANLUVEN, BILLIE CATHEY, ASHIK RAHMAN, TAYLOR BODIFORD, and TRACNESA RANDOLH<br><br>    Plaintiffs,<br><br>v.<br><br>LANDMARK HOSPITAL OF ATHENS, LLC and ATHENS PULMONARY AND SLEEP MEDICINE, P.C.,<br><br>    Defendants. | CIVIL ACTION NUMBER:<br>3:21-cv-0036-CAR |

## ATHENS PULMONAY AND SLEEP MEDICINE, P.C.'s MOTION TO DISMISS

Athens Pulmonary and Sleep Medicine, P.C. ("Athens Pulmonary"), by and through undersigned counsel and pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), hereby moves to dismiss the Complaint [Dkt. 3]. In support of this Motion, Athens Pulmonary shows as follows:

### INTRODUCTION

Athens Pulmonary has provided pulmonary and sleep medicine services to the Athens community for over 40 years. During the height of the COVID-19 pandemic, Athens Pulmonary, like many providers, provided critical, life-saving care to individuals suffering from coronavirus-related and other illnesses. Equipped with few resources and little guidance from the federal government on the standard of care for this newly emerging virus, Athens Pulmonary did everything it could to address the disastrous effects of the pandemic, including providing care to

patients hospitalized at Athens-area hospitals like Landmark Hospital, Piedmont Athens Regional Hospital, and St. Mary's Hospital.

Instead of being lauded for their indispensable efforts, Athens Pulmonary now faces meritless accusations that it violated the False Claims Act ("FCA") and the Georgia False Medicaid Claims Act ("GFMCA") by treating patients suffering from COVID-19.[1] Specifically, Plaintiffs contend that because Athens Pulmonary tested is patients for COVID-19 using tracheal aspirate specimens, as opposed to nasal swabs, it made false records and statements in violation of 31 U.S.C. § 3729(a)(1)(B) (Count 1), caused other providers to present false claims in violation of 31 U.S.C. § 3729(a)(1)(A) (Count 2), conspired to violate the FCA (Count 3), and violated the FCA by failing to test its patients effectively for COVID-19 (Count 5).[2] Plaintiffs fail to state a claim as a matter of law against Athens Pulmonary and, accordingly, all counts of the Complaint against it should be dismissed.

**ARGUMENT**

**I.   Legal Standard for Motions to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a complaint, or portions of a complaint, for failure to state a claim upon which relief can be granted. Although the Court must accept the factual allegations as true and construe those allegations in the light most favorable to the plaintiff, the Court is not required to accept the plaintiff's legal conclusions. *New*

---

[1] It should be noted that after a brief investigation, both the Department of Justice (DOJ) and the Medicaid Fraud Control Unit (MFCU) declined to intervene in this matter. Accordingly, under the FCA, if Athens Pulmonary prevails in this action, including on a motion to dismiss, it is entitled to reasonable attorneys' fees and expenses. 31 U.S.C. § 3730(d)(4). Athens Pulmonary reserves its right to file a motion for such fees and expenses if and when the complaint is dismissed or at a later date as appropriate.

[2] Count 4 of the Complaint alleges that Defendant Landmark Hospital failed to test its patients effectively for COVID-19, resulting in FCA and GFMCA violations. However, Count 4 is alleged against Landmark only and accordingly is not addressed herein.

*York Life Ins. Co. v. Grant*, 57 F. Supp. 3d 1401, 1410 (M.D.Ga. 2014); *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). Moreover, the Court should reject "unwarranted deductions of fact or legal conclusions masquerading as facts." *New York Life Ins. Co.*, 57 F. Supp. 3d at 1410.

The Court may dismiss a complaint if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1409. A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim will not survive a motion to dismiss if it presents only the mere possibility that the defendant might have acted unlawfully. *Id.* The well-pleaded allegations of the complaint must move the claim "across the line from conceivable to plausible." *Hull v. Hull*, 2014 WL 12703566, at *5 (quoting *Twombly*, 550 U.S. at 570).

In addition, FCA complaints also must meet the heightened pleading standard of Rule 9(b) and state with particularity the circumstances constituting fraud or mistake. *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1308-09 (11th Cir. 2002). The complaint must provide the defendant with "enough information to formulate a defense to the charges." *Id.* at 1313 n.24. The complaint must plead not only the "who, what, where, when, and how of improper practices," but also the "who, what, where, when, and how of fraudulent submissions to the plaintiff." *Corsello v. Lincare, Inc.,* 428 F.3d 1008, 1014 (11th Cir. 2005).

## II.    The Complaint Fails To State A Claim Under the FCA.

The FCA imposes liability on any person or entity that "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or that "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1154-55 (11th Cir. 2017). As the United States Supreme Court recognized, "[t]he False Claims Act is not an 'all-purpose antifraud statute' . . . or a vehicle for punishing garden variety breaches of contract or regulatory violations. *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2003 (U.S. 2016). Rather, liability under the FCA is reserved for those "who present or directly induct the submission of false or fraudulent claims" to the government. *Id.* at 1996.

The Relators in this case assert claims under 31 U.S.C. §§ 3729(a)(1)(A), (B), and (C). (Compl., Counts 1-3, 5).[3] To establish a cause of action under Section 3729(a)(1)(A) (Count 1), the plaintiff must prove three elements: "(1) a false or fraudulent claim, (2) which was presented, or caused to be presented, for payment or approval, (3) with the knowledge that the claim was false." *Phalp*, 857 F.3d at 1154.  To prove a claim under Section 3729(a)(1)(B) (Count 2), the plaintiff must show that: "(1) the defendant made (or caused to be made) a false statement, (2) the defendant knew it to be false, and (3) the statement was material to a false claim."  *Id.* Section 3729(a)(1)(A) requires the presentment of a false or fraudulent claim to the government, whereas Section 3729(a)(1)(B) requires proof that "the defendant made a false record or statement for the purpose of getting a false or fraudulent claim paid by the Government." *Allison Engine Co., Inc. v. U.S. ex rel. Sanders*, 553 U.S. 662, 671 (2008). If a defendant does not intend for the government

---

[3]    Count 5 asserts violations of both Sections 3729(a)(1)(A) and 3729(a)(1)(B) based on the nebulous accusations that Athens Pulmonary failed to adequately test patients for COVID-19.

to rely on its false statement as a condition of payment, "the statement is not made with the purpose of inducing payment of a false claim," and there is no FCA violation. *Id.* Section 3729(a)(1)(C) (Count 3) prohibits conspiracies to violate either Section 3729(a)(1)(A) or 3729(a)(1)(B).

Relators' claims can be distilled to four basic allegations:

- That the FDA did not approve tracheal aspirate specimens for COVID-19 testing;
- That Landmark Hospital and Athens Pulmonary used tracheal aspirate specimens to test for COVID-19;
- That the specimens submitted for testing were not explicitly labeled as tracheal aspirate specimens; and
- That Athens Pulmonary fail to adequately test patients for COVID-19 and therefore its patients were subjected to unnecessary medical treatment and were not properly isolated.

### a. The Complaint Fails to Allege Falsity

The Complaint should be dismissed as to Athens Pulmonary because it fails to adequately alleged falsity. Improper practices alone "are insufficient to show falsity without proof that specific claims were in fact false when submitted to Medicare." *U.S. v. AseraCare Inc.*, 153 F. Supp. 3d 1372, 1387 (N.D.Ala. 2015). The "fact that there may have been a violation of the laws governing Medicare is not enough, standing alone, to sustain a cause of action under the False Claims Act." *Phalp*, 857 F.3d at 1154. Indeed, "[t]he FCA requires '***proof of an objective falsehood***.'" *U.S. ex rel. Parato v. Unadilla Health Care Ctr. Inc.*, 787 F.Supp.2d 1329, 1339 (M.D. Ga. 2011) (emphasis added).

Relators' theory of falsity is seemingly based on the allegation that tracheal specimen testing for COVID-19 using nasal swab kits is not a reimbursable testing methodology. (*See*

Compl. ¶ 40.) However, Relators have failed to identify any binding law or regulation that prohibits providers from submitting tracheal aspirate specimens for COVID-19 testing.

Relators cite to federal regulations governing laboratories (Compl. ¶¶ 32-38) and the lack of FDA approval (*id.* ¶ 41) as the basis for their falsity allegations. However, neither are apposite. The federal regulations cited by Relators, 42 C.F.R §§ 493, *et seq.*, provide that laboratories must follow certain policies and procedures for tests. There is no allegation, much less a citation to any authority, that COVID-19 testing was subject to the standard requirements for nonwaived testing. Even if the cited regulations are applicable to COVID-19 testing, there is nothing in those regulations that prohibits the collection of tracheal aspirate specimens. Additionally, Relators allege that the FDA had not approved such specimens for COVID-19 testing. (Compl. ¶ 41). Yet, they provide no authority for that proposition, nor do they even allege that the lack of FDA approval renders a claim false for purposes of the FCA.[4] Relators' failure to plead falsity with the requisite specificity – instead citing broadly to over 40 separately federal regulations – means the Complaint should be dismissed in its entirety as to Athens Pulmonary. *See e.g., U.S. ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016) (affirming dismissal of FCA complaint and noting that where the falsity "release to a failure to comply with certain statutory and regulatory provisions, the plaintiff should be able to the [defendant] which ones it flouted, how, and when").

### b. *The Complaint Fails to Allege Any Claim Was Submitted For Payment*

Eleventh Circuit case law is clear: the submission of a false claim to the government is the *sine qua non* of an FCA violation. *Urquilla–Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1052 (11th Cir. 2015); *accord Hopper v. Solvay Pharma., Inc.*, 588 F.3d 1318, 1328 (11th Cir. 2009). Crucially,

---

[4] Nor do Relators allege that Athens Pulmonary knew the FDA had not approved tracheal aspirate specimens for COVID-19 testing, that Athens Pulmonary knew the lack of FDA approval would result in the submission of a false claims, or that FDA approval was material to the government's decision to pay, all of which are essential elements discussed below.

6

the Eleventh Circuit has fairly recently reiterated that "[t]o meet this standard . . . a complaint must allege *actual submission of a false claim* and that it must do so with some indicia of reliability." *Estate of Helmly v. Bethany Hospice & Palliative Care of Coastal Ga.*, 853 F. App'x 496, 501 (11th Cir. 2021) (emphasis added) (internal quotations omitted), and it must do so with particularity under Rule 9(b). *Corsello*, 428 F.3d at 1012. Under the Eleventh Circuit's *Bethany Hospice* holding, Relators are required to (1) include details about specific claims submitted to the government; or (2) provide "sufficient indicia of reliability to support their claim that Athens Pulmonary submitted false claims to the government. *Id.* Relators do neither here. It is not enough for Relators to point to some wrongdoing and infer that fraudulent claims were submitted because, as the Eleventh Circuit held in *Bethany Hospice*, "submission cannot be inferred from the circumstances." *Id.*

In the Eleventh Circuit, FCA relators must plead not only the "who, what, where, when and how of improper practices, but also the who, what, where, when, and how of *fraudulent submissions to the government.*" *Id.* This heightened requirement "serves to ensure that a FCA claim has some indicia of reliability to support the allegation of an actual false claim for payment being made to the Government," *Id.* (internal quotation omitted). Relators have failed to satisfy Rule 9(b) by failing to allege with particularity that fraudulent claims were submitted to a government payor.

At best, Relators provide details about when certain patients were tested for COVID-19 and how those specimens were taken. However, the Complaint fails to identify a single instance where the treatment for any of those patients was improperly billed to a federal healthcare program. Indeed, the Complaint does not even allege that any of the patients were federal healthcare program beneficiaries. The Complaint makes a single generalized allegation that "[t]he fraudulent actions

of Defendants . . . caused the submission to the government of false and fraudulent claims . . . ." (Compl. ¶ 28). This allegation, however, does not even pass muster under the liberal pleading standards of *Twombly* and *Iqbal*, much less under the heightened pleading standard required by Rule 9(b). *Clausen*, 290 F.3d at 1311 ("Rule 9(b) . . . does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Plaintiff."); *see also*, *Corsello*, 428 F.3d at 1013 (finding "allegations also failed to provide a factual basis to conclude fraudulent claims were ever actually submitted to the [government]").

Moreover, Relators' failure to allege that any of them had any personal knowledge of Athens Pulmonary's billing practices means there is absolutely no indicia of reliability to Relators' generalized and conclusory allegation that Athens Pulmonary's actions "caused the submission to the Plaintiff of false and fraudulent claims by physicians, clinics, medical providers and medical facilities." (Compl. ¶ 28). The Eleventh Circuit has upheld the dismissal of a complaint under similar circumstances. In *Bethany Hospice*, the Eleventh Circuit upheld the dismissal of an FCA complaint because Relators, despite alleging access to the defendants' billing system, "failed to provide any specific details regarding either the dates on or the frequency with which the defendants submitted false claims, the amount of those claims, or the patients whose treatment served as the basis for the claims." 853 F. App'x at 502. Similarly, in *Corsello*, the Relator, who worked in sales, alleged he was aware of the defendant's billing practices and alleged the initials of patients whose Medicare forms were improperly completed and resulted in the submission of false claims. *Id.* The Eleventh Circuit found that his allegations "lacked the indicia of reliability .

. . because they failed to provide an underlying basis for [plaintiff's] assertions," and he "did not explain why he believes fraudulent claims were ultimately submitted." *Id.*

Here, Relators do not even go as far as the plaintiff in *Bethany Hospice* or *Corsello* as they do not even allege familiarity with Athens Pulmonary's billing practices. Accordingly, Relators fail to satisfy Rule 9(b)'s particularity requirement with respect to the submission of false claims, which warrants dismissal of the Complaint in its entirety as to Athens Pulmonary. *See e.g.*, *U.S. v. Med-Care Diabetic & Med. Supplies, Inc.*, No. 10-81634, 2014 WL 12284079, at *4 (S.D. Fla. June 23, 2014) (dismissing complaint where plaintiff "never alleges that she had any firsthand knowledge of Defendants' billing practices," and therefore "cannot meet Rule 9(b)'s particularity requirement").

### c. The Complaint Fails to Adequately Allege Scienter

The FCA imposes liability against a person or entity that "*knowingly* presents, or causes to be presented, a false or fraudulent claim for payment or approval" or that "*knowingly* makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *See Phalp*, 857 F.3d at 1154-55 (citing 31 U.S.C. § 3729(a)(1)(A)-(B))(emphasis added)). Plaintiffs must sufficiently allege that Athens Pulmonary acted "knowingly," which the FCA defines as either "actual knowledge of the information," "deliberate ignorance of the truth or falsity of the information," or "reckless disregard of the truth or falsity of the information." *See* 31 U.S.C. § 3729(b)(1)(A).

Although, unlike the other elements of an FCA claim, scienter is not required to be pled with particularity, conclusory allegations of scienter, such as those presented by the Relators in this case, are insufficient. *See Escobar*, 136 S. Ct. at 1989 (finding that the FCA's materiality and scienter "requirements are rigorous."); *see also Urquilla-Diaz*, 780 F.3d at 1051 ("[w]here [plaintiff's FCA] allegations are merely "labels and conclusions" or "a formulaic recitation of the

9

elements of a cause of action," the plaintiff's claim will not survive a motion to dismiss."). As the Eleventh Circuit has held, "[t]he False Claims Act's scienter requirement is actually quite nuanced." *Id.* at 1058. Plaintiffs can satisfy the scienter requirement only by adequately pleading that Athens Pulmonary had actual knowledge of, was deliberately ignorant of, or recklessly disregarded, the falsity of their claims. *Id.* There is no liability for "innocent mistakes or simple negligence," *id.,* and the FCA is not "a vehicle for punishing garden variety breaches of contract or regulatory violations. *Escobar*, 136 S. Ct. at 2003.

Here, the Complaint simply tracks the language of the FCA, alleging, with absolutely no factual support, that "Defendants, with actual knowledge of the information, in deliberate ignorance of the truth or falsity of the information, or in reckless disregard of the truth or falsity of the information have presented or caused to be presented false or fraudulent claims for payment or approval . . .." and "have made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim. (Compl. ¶¶ 22-23.) This is precisely the type of conclusory allegation that has been flatly rejected by the Eleventh Circuit. *See e.g., Urquilla-Diaz*, 780 F.3d at 1061.

At most, Relators allege that Defendants knew they were providing tracheal specimens rather than nasal specimens to the laboratory for testing. (*Id. ¶¶* 87-93.) That, however, is not sufficient to establish the scienter requirement, because the FCA "does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the government to pay amounts it does not owe." *Clausen*, 290 F.3d at 1311. It is not enough to allege that Athens Pulmonary had knowledge of improper conduct. Rather, Relators must adequately allege that Athens Pulmonary had knowledge of false claims being submitted to a federal healthcare program. In that respect, the

Complaint is wholly lacking. Moreover, even the allegations regarding knowledge that tracheal specimens were not FDA approved are insufficient to establish that *Athens Pulmonary* had the requisite scienter. This is because none of the conversations cited in the Complaint where FDA approval was discussed are alleged to have involved Athens Pulmonary or any of its physicians (*See* Compl. ¶¶ 81-84), and there are no other allegations that such knowledge was ever imputed to Athens Pulmonary.

Relators fail to allege Athens Pulmonary had actual knowledge of false claims being submitted to the government, that Athens Pulmonary knew its COVID-19 testing practices would result in the submission of false claims to the government, or even a subjective awareness that tracheal swabs were not FDA approved and therefore not reimbursable by government payors. Thus, Relators have failed to plausibly allege a single fact to demonstrate that the Athens Pulmonary acted with the requisite scienter under the FCA, and the Complaint should be dismissed in its entirety as to Athens Pulmonary for this reason as well.

### d. The Complaint Fails to Allege Materiality

In addition to alleging the submission of false claim and scienter, Relators must also sufficiently plead materiality, which is a "demanding" and "rigorous" standard. *Id.* at 2001-03. Specifically, Relators must "plead their claims with plausibility and particularity under [Rule 8 and 9(b)] by, for instance, pleading facts to support allegations of materiality." *Id.* at n.6. A misrepresentation or technical violation of one of the myriad laboratory regulations is not material "merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Id.* And, importantly for this case, if the government pays claims knowing that requirements were not met and signaled no change in position, "that is strong evidence that the requirements are not material." *Id.* at 2003-04; *U.S. v.*

*Salus Rehab., LLC*, 304 F. Supp. 3d 1258, 1268 (M.D. Fla. 2018) ("Every day that the government continues to pay for a good or services, notwithstanding some known or unknown non-compliance . . . the great the practical impediment to proof of materiality.").

While the word "materiality" appears 7 times in the Complaint, none of those instances is in the context of alleging an actual fact to support materiality. Twice Relators allege only that "laboratory requisition forms and laboratory test reports are material for payment to false or fraudulent claims submitted to the Government." (Compl. ¶¶ 133, 139). That allegation fails to satisfy Rule 9(b)'s particularity requirement and should be disregarded entirely. It is conclusory and there is no allegation that compliance with various laboratory regulations cited is a prerequisite to the government's payment. *See U.S. ex rel. Compton v. Circle B Enters., Inc.*, No. 7:07-cv-32(HL), 2010 WL 942293, at *8 (M.D. Ga. Mar. 11, 2010) (holding an FCA relator is required to plead the government conditioned its payment on compliance with a particular regulation).

However, even assuming that allegation satisfies the requisite pleading standard for materiality, Relators still fail to state a claim for relief. That allegation establishes only that requisition forms and test reports are material for payment; it does not establish that tracheal, as opposed to nasal, specimen requisition forms and lab reports are material to the government's decision to pay. There is no dispute that Athens Pulmonary ordered COVID-19 tests and there were reports of those test results, but Relators fail to allege how those tests were ordered and performed are material. The 5 remaining references to "materiality" were all part of the recitation for the elements of a particular claim under the FCA or GFMCA, rather than substantive allegation that Athens Pulmonary's false claims were material to the government's decision to pay. (¶¶ 18-21, 23).

Relators end their complaint with the conclusory allegation that "had the [government] known that the bills caused to be presented by Defendants and presented directly by Defendants for payment were false or misleading, payment would not have been made for such claims." (Compl. ¶ 160.) If it were sufficient to simply say false claims are material to the government's decision to pay, however, the materiality requirement would be meaningless. The bare conclusory allegation does not even satisfy Rule 8's liberal pleading requirement, much less the particularity required by Rule 9(b). Accordingly, the Complaint should be dismissed in its entirety against Athens Pulmonary for this reason as well.

### e. The Complaint Fails to State a Claim For Conspiracy to Violate the FCA

In Count 3, Relators assert a cause of action for conspiracy to violate the FCA. 31 U.S.C. § 3729(a)(1)(C). (Comp. ¶¶ 138-141.) To state a claim for conspiracy under the FCA, Relators must show "(1) that the defendant conspired with one or more persons to get a false or fraudulent claim paid by the United States; (2) that one or more of the conspirators performed any act to effect the object of the conspiracy; and (2) that the United States suffered damages as a result of the false or fraudulent claim." *Corsello*, 428 F.3d at 1014. "The essence of a conspiracy under the [FCA] is an agreement between two or more persons to commit a fraud." There must be a meeting of the minds, *U.S. ex rel. Compton v. Circle B Enters., Inc.*, No. 7:07-cv-32 (HL), 2011 WL 382758, at *9 (M.D. Ga. Feb. 3, 2011), and an intent to defraud the government. *Allison Engine*, 553 U.S. at 672. FCA conspiracy claims must also satisfy Rule 9(b)'s particularity requirements. *See Corsello*, 428 F.3d at 1014.

Relators' conspiracy claims are confined to two conclusory paragraphs in the Complaint. (Compl. ¶¶ 139-40.) Therein, Relators allege that "Landmark Hospital and Athens Pulmonary formed an agreement to and then did knowingly made or care to be made false laboratory requisition forms and laboratory tests that were material to the false or fraudulent claims," or

13

"which caused PARMC to present false or fraudulent claims for payment or approval to the Government. . .." *Id.* This is precisely the type of bare legal conclusion that courts dismiss for failure to state a claim. *See e.g.*, *Corsello*, 428 F.3d at 1014 (dismissing conspiracy claim where plaintiff alleged "Lincare and Varraux conspired to defraud the Government"). Relators have failed to specifically allege any agreement between Landmark Hospital and Athens Pulmonary, much less an agreement that was intended to defraud the government or that "had the purpose of getting [a] false record or statement to bring about the Government's payment of a false or fraudulent claim." *Allison Engine*, 553 U.S. at 672. At best, the Complaint demonstrates that Landmark Hospital and Athens Pulmonary were both using tracheal specimens instead of nasal specimens, but it does not allege that there was an agreement to do so or that the purpose of that agreement was to get the government to reimburse those false claims.

Since Relators' fail to allege the existence of any agreement – other than one conclusory statement – their conspiracy claim must also be dismissed as to Athens Pulmonary. *See Corsello*, 428 F.3d at 1014 (upholding dismissal of conspiracy claim predicated on a "bare legal conclusion [that] was unsupported by specific allegations of any agreement or overt act."); *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A., v. Provident Life & Acc. Ins. Co.*, 721 F. Supp. 1247, 1259 (S.D. Fla. 1989); *Blusal Meats Inc. v. U.S.*, 638 F. Supp. 824, 828 (S.D.N.Y. 1986).

**III.     The Complaint Fails To State A Claim Under the GFMCA.**

Relators also assert claims under the Georgia False Medicaid Claims Act ("GFMCA"), O.C.G.A. § 49-4-168, *et seq*. "The statutory language in the GFMCA [] mirrors the language in the federal False Claims Act, 31 USC § 3730 (h), and courts generally look to federal case law to decide issues under the GFMCA." *Murray v. Cmty. Health Sys. Pro. Corp.*, 345 Ga. App. 279, 283, 811 S.E.2d 531, 527 (2018); *see also Cade v. Progressive Cmty. Healthcare, Inc.*, 2011 WL

14

2837648, at *3 (N.D. Ga 2011) ("The language of the GFMCA is nearly identical to the FCA's language, so *Clausen*'s reasoning applies and claims under the GFMCA also must satisfy Rule 9(b)."). Thus, the arguments raised in support of dismissal of Relators' FCA claims apply with equal measure to their state law claims under the GFMCA. *See e.g.*, *Bethany Hospice*, 853 F. App'x at 499-503 (dismissing both FCA and GFMCA claims); *accord Cade*, 2011 WL 2837648, at *11. Accordingly, for the same reasons listed above, the GFMCA claims against Athens Pulmonary should also be dismissed.

## CONCLUSION

Relators have completely failed to plead any violation of the FCA or GFMCA. There is not one single allegation that a false claim was submitted to, presented to, or paid by the government – the essential element of both the FCA and GFMCA – much less an allegation that satisfies the heightened particularity requirement of Rule 9(b). Moreover, the Complaint fails to adequately allege that using tracheal specimens for COVID-19 testing renders a claim false, that such falsity was material to the government's decision to reimburse claims at the height of an international pandemic, or that Athens Pulmonary knew that it was submitting false claims for COVID-19 testing. Any one of these failures is enough to dismiss the Complaint in its entirety against Athens Pulmonary. Combined, they leave no doubt that this Complaint should be dismissed.

For these reasons, Athens Pulmonary respectfully requests that the Court dismiss the complaint in its entirety as to Athens Pulmonary.

Respectfully submitted this 13th day of May, 2022.


*/s/ Scott R. Grubman*
Scott R. Grubman (GA Bar 317011)
Brittany M. Cambre (GA Bar 350793)

CHILIVIS GRUBMAN
1834 Independence Square
Atlanta, Georgia 30338
Telephone: 404-233-4171
Facsimile:  404-261-2842
sgrubman@cglawfirm.com
bcambre@cglawfirm.com

*Attorneys for Defendant*
*Athens Pulmonary and Sleep Medicine, P.C.*

## **CERTIFICATE OF SERVICE**

I certify that on this date, I electronically served the foregoing Motion to Dismiss using the CM/ECF system which automatically sends e-mail notification of such filing to all attorneys of record.

Date: May 13, 2022

>*/s/ Scott R. Grubman*
>Scott R. Grubman (GA Bar 317011)
>Brittany M. Cambre (GA Bar 350793)
>
>CHILIVIS GRUBMAN
>1834 Independence Square
>Atlanta, Georgia 30338
>Telephone: 404-233-4171
>sgrubman@cglawfirm.com
>bcambre@cglawfirm.com
>
>*Attorneys for Defendant*
>*Athens Pulmonary and Sleep Medicine, P.C*