IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, and STATE OF GEORGIA ex rel. REBECCA WILLIAMS, MORGAN VANLUVEN, ET AL. <br><br>   Plaintiffs, <br><br>v. <br><br>LANDMARK HOSPITAL OF ATHENS, ET AL. <br>   Defendants. | CIVIL ACTION NUMBER: <br>3:21-cv-0036-CAR |

**ATHENS PULMONARY AND SLEEP MEDICINE, P.C.'s**
<u>**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**</u>

  In their response, Relators attempt to downplay Rule 9(b)'s pleading requirement in favor of Rule 8's "short and plain statement" pleading requirement. As the Eleventh Circuit has noted, however, "the [FCA's] particularity rule serves an important purpose in fraud actions by . . . protecting defendants against spurious charges of immoral and fraudulent behavior," *U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693, 703 (11th Cir. 2014), even if the practical result of the heightened pleading requirement "makes it hard for many persons to be a *qui tam* suit." *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1308 (11th Cir. 2002). The FAC fails to adequately plead a claim under the FCA and, accordingly, should be dismissed with prejudice.

  **I. Relators Have Failed to Plead the Submission of a Claim.**

  The FAC's fundamental flaw is that it fails to adequately plead the *submission* of a false claim. The FCA "attaches liability, not to the underlying fraudulent activity . . . but to the claim for payment. Therefore, the central question in [FCA] cases is whether the defendant ever

1

presented a false or fraudulent claim to the government." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999). Relators have neither plead details about specific claims submitted nor provided sufficient indicia of reliability as required by *Estate of Helmly v. Bethany Hospice & Palliative Care of Coastal Ga*. 853 F. App'x 496, 501 (11th Cir. 2021).[1] Relators fail to plead specifics of a single claim that Athens Pulmonary (hereinafter "Athens") submitted to Medicare for COVID testing. Relators assert that they have attached billing data that shows the requisite details. [Dkt, 38 at 11] However, that data does not establish that Athens submitted a claim for COVID testing; only that CareSource included a "Physician Visit/Exam" on a single patient's Explanation of Benefits. [Dkt. 34 at 9-10.]

Nor have Relators plead sufficient indicia of reliability to otherwise establish Rule 9(b)'s pleading requirements, which requires alleging "personal knowledge or participation in the fraudulent conduct." *Bethany Hospice*, 583 F. App'x at 501. "It is not enough for [Relators] to state baldly that [they were] aware of the defendants' billing practices, to base [their] knowledge on rumors, or to offer only conjecture about the source of [their] knowledge[;]" they must allege first-hand knowledge of Athens's billing practices. *Mastej*, 591 F. App'x at 704-05.[2] There is no allegation that Relators participated in or had knowledge of Athens's billing or claims submission

---

[1] Relators seemingly rely on *U.S ex rel. Underwood v. Genentech, Inc.*, 720 F. Supp. 2d 671 (E.D.Pa 2010) for the proposition that the submission of claims can be presumed. [Dkt. 38 at 7]. However, in that case, the government argued on a motion to dismiss that given the scope of the scheme alleged, the submission of claims could be presumed. The court did not agree with the government's assertion and specifically noted that Eleventh Circuit precedent would require a different outcome. *Id.* at 679. The Eleventh Circuit prohibits the presumption that claims were submitted; Relators must allege specific facts demonstrating the submission of claims. *See Clausen*, 290 F. 3d at 1311 ("Rule 9(b) . . . does not permit a [FCA] plaintiff . . . to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Plaintiff."); *Corsello v. Lincare*, 428 F.3d 1008, 1013 (11th Cir. 2005) ("Although we construe all facts in favor of the plaintiff..., we decline to make inferences about the submission of fraudulent claims because such an assumption would strip all meaning from Rule 9(b)'s requirements of specificity.").

[2] Relators assert that their knowledge and participation mandate a relaxed indicia standard, but this misconstrues applicable pleading standards. Rule 9(b)'s heightened pleading standard applies regardless of how a relator attempts to allege the submission of a false claim. *See Mastej*, 591 F. App'x at 704.

process. Indeed, by Relators' own admission, "they were simply too busy nursing during a pandemic to wander over to the billing office to get more data." [Dkt. 38 at 13].

Relators' reliance on *Mastej* and *Walker* is misplaced. [*See* Dkt. 38 at 13.] In *Mastej*, the Eleventh Circuit found that Relator "sufficiently articulated how he allegedly gained his direct, first-hand knowledge of the Defendants' submission of false [claims]," because as Vice President he attended meetings where "Medicare patients and billing were discussed," and that he was "intimately familiar with the payor mix at the hospitals and the Medicare billing and payments." 591 F. App'x at 707. Here, Relators have failed to explain how they have any first-hand knowledge of, or participation in, Athens's billing practices. Unlike in *Walker*, where Relator had direct conversations with the office administrator about how billing would be conducted, Relators do not allege any conversations with a member of Athens's staff regarding billing; the only conversations they cite were about whether COVID testing was being properly conducted.

Because Relators have failed to adequately plead the submission of a false claim, the entirety of the FAC should be dismissed as to Athens on this ground alone.

## II. Relators Have Failed to Adequately Plead Falsity.

The FAC also fails to allege that any of the purported claims were *false*. Relators fail to identify any binding law or regulation that prohibits Athens from submitting claims for tracheal aspirate specimens for COVID testing. The CDC guidelines identified by Relators are recommended *collection techniques* for results that were being reported to the CDC under the CARES Act; not Medicare billing guidelines. Even assuming that the CDC guidelines prohibited the COVID testing alleged here, the FAC does not take the necessary extra step of alleging that violations of those guidelines render a claim false under the FCA. The leap Relators seek to make has been rejected by courts, even at the motion to dismiss stage. As one Court recently explained:

3

> [Relator's] central argument hangs on alleged violations…of FDA regulations….[which prohibit] the "introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a). A device is "misbranded" if "there has been a failure or refusal to give required notification or to furnish required material or information." Relator alleges that Defendant failed to provide the FDA such notification….Thus, says Relator, all test strips placed into the stream of commerce while Defendant was breaching this regulatory obligation were misbranded. And because they were misbranded…they were ineligible for reimbursement by Medicare…, so any claims for any test strip manufactured during this period were necessarily false. This is where Relator's argument falls apart. Even if Defendant's test strips manufactured between 2013 and 2016 were misbranded, as Relator argues, **Relator cites no portion of the FDCA closing the circuit between misbranding and claims for reimbursement from the government**.

*See e.g., U.S. ex rel. Crocano v. Trividia Health Inc.*, No. 22-cv-60160, 2022 WL 2800380, at *8-9 (S.D.Fla. July 18, 2022) (internal citations omitted) (emphasis added).

Relators characterize Athens' conduct as a "lie," without any factual support. *See* Dkt. 38 at 10. There is no allegation that any government payor disallowed tracheal aspirate specimens; indeed, they were the preferred methodology for hospitalized patients. *See* Dkt. 25-1 at 16. There is no allegation that the Athens represented to the government that they were performing nasal swab specimens when they were in fact performing tracheal aspirate specimens. There is no allegation that the government distinguishes between nasal and tracheal aspirate methodologies for reimbursement purposes (i.e. reimburses one at a higher rate than the other). Even assuming that Athens lied about their testing scheme, the critical question is whether Athens "lied" *to the government by presenting a false claim*. Without any allegation about how the claims were billed and whether that billing methodology violated applicable rules, there is no plausible allegation of falsity and the FAC should be dismissed for this reason as well.

4

### III.     Relators Have Failed to Adequately Plead Scienter.

The FAC fails to allege that Athens knew its COVID testing methodology resulted in the submission of false claims. At best, Relators allege that Athens knew it was testing specimens that did not comport with CDC specimen collection guidelines. The FAC, however, is silent as to whether Athens knew that violating these guidelines was a requirement to be reimbursed by Medicare (which, as discussed above, Relators have not even alleged is the case).

Relators cite to several recordings or meeting where Relators told Landmark Hospital that the tracheal specimens it was using were not FDA approved. None of those conversations involved Athens, and, despite Relators' attempts to the contrary, that knowledge cannot be imputed to Athens absent specific factual allegations demonstrating Athens had actual knowledge, was deliberately ignorant or, or recklessly disregarded the FDA approval issues with its COVID testing methodology.  The FAC should be dismissed for this reason as well.

### IV.     Relators Have Failed to Adequately Plead Materiality.

The final element of a FCA claim, materiality, must be "pleaded with particularity." *U.S. ex rel. Foreman v. AECOM*, 19 F. 4th 85, 109 (2d Cir. 2021). The standard is demanding, and it ensures the FCA does not become an all-purpose antifraud statute or a "vehicle for punishing garden-variety breaches of contract." *Id.* Relators have failed to adequately plead materiality and dismissal of the FAC is warranted. *See e.g.*, *U.S ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237, 242 (5th Cir. 2020) (affirming dismissal of FCA claim where plaintiff failed to adequately allege materiality); *U.S. ex rel. Petratos v. Genentech, Inc.*, 855 F.3d 481, 489 (3rd Cir. 2017) (recognizing heightened standard after [*Escobar*]" and affirming dismissal).

Relators contend that "Defendants clearly thought its false testing scheme was material or it would not have tried to hide it." [Dkt. 38 at 14]. This argument, however, misconstrues the

materiality inquiry. The relevant question is not whether the conduct was material to *Defendants*, but rather the conduct was material to the *government's* decision to pay. *See Petratos*, 855 F.3d at 492 ("Because the [FCA] was passed to protect the federal treasures, and since the Government decides on payment, it is the Government's materiality decision that ultimately matters."). Relators assert they have alleged "all three materiality factors specifically" [Dkt. 38 at 15]:

> **(a) "FAC alleges that the false test violates a condition of the government's payment"[3]**

Relators cite to paragraphs 34-46 of the FAC, which allege that laboratories performing non-waived tests must have test requisition forms, have policies and procedures for specimen collection, and have lab test reports, and that the CDC issued specimen collection guidelines for respiratory disease testing. Nowhere in these paragraphs do Relators allege that these requirements are a condition of payment, and even if they were, a violation of one of the myriad laboratory regulations is not material "merely because the Government designates compliance with a particular statutory, regulatory or contractual requirement as a condition of payment." *Univ. Health Serv. Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 194 (2016). Nor is there any allegation that CDC guidelines were binding upon Athens or that reimbursement would be conditioned on adherence with CDC guidelines.

> **(b) "[T]he false COVID testing, failure to test for COVID, and failure to isolate went to the essence of the bargain with the government…."[4]**

This allegation is simply absent from the FAC. Nowhere do Relators allege that the type of testing performed by Athens was the essence of the bargain with the government. Indeed, these

---

[3] Dkt. 38 at 15.
[4] *Id*. (citing FAC ¶¶ 142, 158-160, 168, 173, 187).

allegations referenced here were primarily made against Landmark Hospital – not Athens – or are conclusory statements that fail to meet the pleading standard.

> **(c) "[T]hat had the Government known the truth about the COVID testing failure, failure to test, and failure to isolate, it would not have paid for any of the medical services," and that Defendants "knew the Government would not pay if it knew about the false testing."[5]**

Relators' citations to allegations that had the government been aware of the scheme it would not have paid do not support their allegation. Paragraph 203 – which is wholly conclusory and fails to meet the heightened pleading standard– is the only allegation that conceivably relates to materiality, and even it is not enough to withstand dismissal.

### V.   Relators Have Failed to Adequately Plead a Conspiracy.

Relators concede that FCA conspiracy claims require the existence of an "agreement to have false or fraudulent claims paid." [Dkt. 38 at 17]. A conspiratorial agreement under the FCA is not simply an agreement to engage in a specific course of conduct, but it is an agreement with the specific purpose of submitting false claims to the government. *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) ("It is by now axiomatic that a conspiracy requires a meeting of the minds between two or more persons to accomplish a common and unlawful plan."); *Allison Engine Co., Inc. v. U.S. ex rel. Sanders*, 553 U.S. 662, 672 (2008) (FCA conspiracy claims require showing that the conspirators "intended to defraud the Government.").

Relators assert that specific intent to defraud the government is not required for a conspiracy claim because courts have interpreted the FCA's terms "knowing and knowingly" to "require no proof of specific intent to defraud. [Dkt. 38 at 17 n. 4] However, Relators ignore the statutory text of the FCA, which uses the term "knowingly" in the presentment (31 U.S.C. § 3729(a)(1)A)) and make use (31 U.S.C. § 3729(a)(1)(B)) provisions of the FCA but does not

---

[5]   *Id.* at 16.

include the term in a claim for conspiracy (31 U.S.C § 3729(a)(1)(C)). Any argument relying on courts' interpretation of the term "knowingly" is inapposite to a conspiracy claim.

Relators have failed to plausibly plead the existence of an agreement, much less one with the specific intent to defraud the government. At most, Relators have alleged that Landmark employees had a meeting where testing methodologies were discussed and the opinions of certain Athens physicians were relayed. [Dkt. 25 ¶¶ 92-93.] Even construing all reasonable inferences in favor of Relators, these allegations do not establish an agreement to engage in a similar testing scheme, much less that the purpose of the scheme was to get the government to reimburse COVID tests for which it would not have otherwise paid. Relators' own complaint reveals that the alleged purpose of the purported scheme was not to defraud the government, but for Landmark Hospital to maximize patients. [Dkt. 25 ¶ 176]. Thus, the alleged scheme, according to Relators, was designed to "ensure that Landmark Hospital could claim to be a COVID-free facility" and patients would choose to be admitted. Although Relators may take umbrage with Landmark's motive, a desire to maximize hospital occupancy is not a violation of the FCA, and certainly not one committed by Athens, which is a wholly separate and distinct corporate entity.

Stripped of its conclusory allegations, the FAC does not support an inference of an agreement to defraud the government. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293-94 (11th Cir. 2010) (affirming dismissal of conspiracy claims where plaintiff failed to plausibly allege agreement to engage in illegal conduct). Accordingly, this claim should be dismissed.

## VI. Relators Have Failed to Plead a Worthless Services Claim Against Athens.

Relators have misstated the standard for a worthless services claim under the FCA. Contrary to Relator's assertion that such a claim is established if Defendants "lied" about their testing methodology [Dkt. 38 at 18], "a worthless service claim asserts that the knowing request

of federal reimbursement for a procedure *with no medical value* violates the [FCA.]" *Mikes v. Straus*, 274 F.3d 687, *abrogated on other grounds by Escobar*, 579 U.S. at 186. Relators have failed to allege that the testing methodology performed by Athens had no medical value. Even if the testing methodology failed to comport with CDC guidelines, there is no allegation that such failures render the test worthless, nor is it a reasonable inference to conclude the test is worthless when the very guidance relied on by Relators indicates that tracheal aspirate specimens were more appropriate for hospitalized patients. *See* Dkt. 25-1 at 16 (noting that tracheal aspirate swabs are the *preferred, primary* method for COVID testing for in-patient populations).

Even had the FAC established that Athens' testing was a worthless service, it still fails to allege that Athens *knew* that the service was worthless. Indeed, the FAC alleges the opposite – that Athens physicians believed the tracheal aspirate specimens actually provided *more accurate* results than other testing methodologies. *See id.* ¶¶ 78, 92(c). Relators argue, without any citation to authority, that Athens attempts to apply an artificially elevated knowledge standard to worthless services claim. To the contrary, multiple courts have explicitly held that the scienter requirement applies with equal force to a worthless services claim. *See e.g. Mikes*, 274 F.3d at 703 (rejecting liability where "Defendants have presented such overwhelming evidence of their genuine belief that their use of spirometry had medical value," and concluding "as a matter of law that they did not submit their claims with the requisite scienter"); *see also U.S. ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 824 (8th Cir. 2009) (noting there is no "FCA liability absent proof that a party knowingly or with deliberate ignorance charged the government for worthless services"). Relators fail to plead scienter for their worthless services claim, which should be dismissed.

Relators assert that they made other worthless services claims against Athens but fail to identify what those are other than citing to allegations in the FAC articulating the federal

9

regulations regarding laboratory tests, CDC guidelines for specimen collection, and citations to general authority for the worthless services theory. [Dkt. 38 at 19.] Therein, Relators allege that "[t]he Eleventh Circuit recognizes the worthless services theory for bundled per diem medical services." [Dkt. 25 ¶ 49.] However, Relators never allege that Athens provided bundles per diem medical services. Indeed, in Relators' response to Landmark's motion to dismiss, they explain that it is the poor conditions at Landmark Hospital that rendered patient care worthless, "including but not limited to air conditioning failures, dirty linen issues, increased patient skin issues due to heat, a failure to enforce safety precautions related to COVID, a lack of sufficient levels of nursing staff, and a failure to meet even its own staffing matrix." [Dkt. 37 at 10.] None of those allegations are made against Athens. Accordingly, any worthless services claim based on bundled per diem services must also be dismissed as to Athens.

## CONCLUSION

For the foregoing reasons and those contained in its opening brief, Athens respectfully requests that the Court dismiss with prejudice all claims asserted against Athens in the FAC.

Respectfully submitted this 2nd day of August 2022.

/s/ *Scott R. Grubman*
Scott R. Grubman (GA Bar 317011)
Brittany M. Cambre (GA Bar 350793)

CHILIVIS GRUBMAN
1834 Independence Square
Atlanta, Georgia 30338
Telephone: 404-233-4171
Facsimile:  404-261-2842
sgrubman@cglawfirm.com
bcambre@cglawfirm.com

**CERTIFICATE OF SERVICE**

I certify that on this date, I electronically served the foregoing Replay in Support of Motion to Dismiss First Amended Complaint using the CM/ECF system which automatically sends e-mail notification of such filing to all attorneys of record.

| | |
|---|---|
| Date:  August 2, 2022 | Defendant Athens Pulmonary and Sleep Medicine, P.C. |
| | |
| | */s/ Scott R. Grubman* |
| | Scott R. Grubman (GA Bar 317011) |
| | Brittany M. Cambre (GA Bar 350793) |
| | |
| | CHILIVIS GRUBMAN |
| | 1834 Independence Square |
| | Atlanta, Georgia 30338 |
| | Telephone: 404-233-4171 |
| | sgrubman@cglawfirm.com |
| | bcambre@cglawfirm.com |